369 P.2d 288

BUEHNER BLOCK COMPANY, a Utah Corporation, Plaintiff and Appellant,

v.

David H. BYBEE, Verda Bybee, Delilah Ogden, Ben B. Hall, Russell Pinney, Ralph W. Morrison, Callie C. Morrison, Richard S. Morrison and Lavonne Morrison, Defendants and Respondents.

No. 9488.

Supreme Court of Utah.

March 8, 1962.

v. Town of Julesburg, 90 Colo. 258, 8 P.2d 708.

Thomas A. Duffin, Salt Lake City, for appellant.

David H. Bybee, Salt Lake City, Eldon A. Eliason, Delta, for respondents.

WADE, Chief Justice.

This appeal is from a judgment of the court in an action brought by the Buehner Block Company, a corporation, appellant herein, for a declaratory judgment as to the rights of the lessors and lessees in a lease pertaining to certain mining claims known as the Red Dome Placer Mining Claims, located in Millard County, Utah.

The owners of the Red Dome Placer Mining Claims resided in different cities in this state and finding it feasible to advance their respective interest by unitizing their claims, all the owners, as lessors, entered into the lease sought to be interpreted in this action on June 26, 1954, with two of their number who lived near the claims as lessees, namely Ralph W. Morrison and Richard S. Morrison. Appellant was in possession and mining these claims under leases from respondents for a number of years prior to the time this lease was executed. After this lease was executed, appellant, Buehner Block Company, subleased from Ralph W. Morrison and Richard S. Morrison. Subsequently, on February 18, 1960, Armond Ogden and Delilah Ogden, his wife, as owners of part of the claims conveyed some of their interest in the claims and assigned to Buehner Block Company their rights in the lease with the Morrisons commensurate with the interest conveyed.

In its sublease with the Morrisons, the Buehner Block Company had the right to mine and remove cinders and other materials for the manufacture of concrete products from the claims for a monthly rental of a certain sum, and in the event that more than 12,500 tons of cinders were removed in any year during the term of the lease, it agreed to pay at the rate of 38¢ per ton for such excess. After becoming an owner of an interest in the claims, appellant contended that it was a tenant in common and as such and as successor in interest by the assignment from the Ogdens to a lessor's rights in the lease with the Morrisons, it could remove and purchase cinders for 30¢ per ton under the following provisions of that lease:

"2) The Lessees agree to pay as rental the sum of thirty cents per ton for all cinders removed from the premises, the weights to be determined by weighing on a standard scale where that is feasible; otherwise by measuring and computing two (2) cubic yards as equalling one ton of weight; the rental price, (30 cents per ton) stated herein shall be subject to revision after June 30, 1959 in case of serious change, upward or downward in the general

price level, but in no event shall the price per ton exceed six-sevenths, or 85⅝%, of the price per ton received from any sub-lessee under the terms of the lease of the premises.

"5) The Lessees agree to establish prices and markets wherever it is feasible and practical, and the Lessors agree that they will not compete with the prices or markets so established.

"7) The Lessors reserve the right to enter upon and remove materials other than cinders at such time and in such places as shall not interfere with the workings of this lease, [sic] However, it is expressly agreed that cinders removed by the Lessors, or any one of them, shall be done so only by purchase from the Lessees at the established royalty."

The court interpreted the provisions of the lease to mean that an owner lessor regardless of whether he sustained a relationship of tenant in common with any of the other owner-lessors was limited to the removal of cinders at a price established by the lessees as "royalty" for such removal under the provisions of paragraph 7 of the lease, and since Buehner Block Company had agreed in its sub-lease to pay 38¢ per ton for any cinders removed in excess of 12,500 tons in any one year, its obligations to pay for the cinders removed is circumscribed by such sub-lease with the Morrisons.

We agree. This is not a case in which the court is called upon to determine the common-law rights and privileges of a tenant in common to the property in question. The owners and lessors for the term of the lease in question had by that lease agreed what their rights and privileges in the claims should be. By leasing the claims to the Morrisons the right of possession and the right to mine was given to them upon the payment of the rental as provided in the lease. That rental was 30¢ per ton unless revised upward or downward after 1959, but in no case was the rental the Morrisons would be obligated to pay to exceed 85⅝% of the price per ton received from any sub-lessee. Such a provision indicates that it was the intention of the parties to the lease that the lessees should be assured a profit of approximately 15% of the amount the lessees received on the price per ton for cinders removed under any sub-lease they might have or enter into with other parties. The provision in paragraph 5 that the lessees establish markets and prices where feasible, and that the lessors will not compete with such prices or markets, further establishes the intent of the parties that the lessors will not compete with or hinder the lessees in the mining and selling of the materials in the claims; and by paragraph 7 they made it clear that where they personally removed cinders they could do so only by purchasing these from the lessees at the established royalty,

which to be consistent with the intent of the parties that the Morrisons should be entitled to a profit of approximately 15% of the price received per ton for cinders removed, could only mean that the lessors obligated themselves to pay the same price for cinders as the Morrisons required third parties to pay for those cinders upon removal from the premises. To interpret these provisions otherwise, and as contended for by appellant Buehner Block Company, would deprive the Morrisons of the right to retain approximately 15% of the price per ton received by them in the removal and sale of cinders.

Affirmed. Costs to respondents.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.